UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-60898-CIV-MARRA

MARTY STEINBERG,
as Court-appointed Receiver for
LANCER MANAGEMENT GROUP
LLC, et al.

       Plaintiffs

vs.

A ANALYST LIMITED, et al.

       Defendants.

_____/

**ORDER AND OPINION REGARDING FIRSTRAND (IRELAND) PLC'S
RENEWED MOTION TO DISMISS THE FOURTH AMENDED COMPLAINT**

THIS CAUSE is before the Court upon Defendant FirstRand (Ireland) PLC's

Renewed Motion to Dismiss the Fourth Amended Complaint [DE 434].  The motion is

fully briefed and ripe for review.  The Court has carefully considered the motion,

response, and reply, and is otherwise fully advised in the premises.

**Background and Introduction**[1]

On July 8, 2003, the Securities and Exchange Commission filed in this Court a

Complaint for Injunctive and Other Relief against Michael Lauer, Lancer Management

Group, LLC, Lancer Management Group II, LLC, Lancer Offshore, Inc., Lancer

---

[1]  Because the Court assumes familiarity with this case and the numerous
substantive orders entered on similar motions filed in the Enforcement Action and
ancillary matters, it will engage in only a brief discussion of the factual and
procedural background of this case.

Partners, L.P., Omnifund, Ltd., LSPV, Inc. and LSPV, LLC, initiating Case No. 03-80612-CIV (the "Enforcement Action").  On July 10, 2003, this Court entered an Order appointing the Receiver in the Enforcement Action, which, among other things, appointed Marty Steinberg as receiver for the above mentioned entities.  Paragraph 2 of the Receivership Order directs the Receiver to:

> Investigate the manner in which the affairs of Lancer, Lancer II, Offshore, Omnifund, Offshore LSPV, and Partners LSPV were conducted and institute such actions and legal proceedings, for their benefit and on their behalf, and on behalf of the Funds' investors and other creditors, as the Receiver deems necessary . . . against any transfers of monies or other proceeds directly or indirectly traceable from investors in the Funds; provided such actions may include . . . recovery and avoidance of fraudulent transfers under Florida Statute § 726.101 *et seq.* or other state law . . .

The Fourth Amended Complaint in this case is ancillary to the Enforcement Action pursuant to Article IX of the Court's Case Management Order dated January 8, 2004 in Case No. 03-80612-CIV-MARRA.  *See* Compl. ¶ 9.

On July 9, 2004, the Receiver filed a complaint initiating this proceeding against numerous parties who allegedly received avoidable and fraudulent transfers. In the Fourth Amended Complaint, it is alleged that FirstRand (Ireland) PLC, f/k/a RMB International (Dublin) Ltd., ("FirstRand") was an investor who made a single contribution of two million dollars to Lancer Offshore, Inc. ("Offshore"), Lancer Partners, L.P. ("Partners"), Omnifund, Ltd. ("Omnifund"), LSPV, Inc. ("Offshore

LSPV") and/or LSPV, LLC ("Partners LSPV")[2] on October 1, 1997 under the name RMB International Limited ("RMB").  *See* Fourth Amended Complaint ("Complaint" or "Compl."), DE 259, ¶ 82 & Ex. B.  It is also alleged that FirstRand received two allegedly voidable redemptions from the Funds:  $1,000,000 on October 20, 1999 (the "First Redemption"), and $2,735,470.65 on January 26, 2001 (the "Second Redemption").  Compl. ¶ 83 & Ex. B.  Thus, FirstRand allegedly received from or on behalf of the Funds total redemptions which exceeded FirstRand's total contributions by $1,735,470.65 (the "Excess Redemptions").  The Receiver seeks to recover these excess redemptions as fraudulent avoidable transfers.  Compl. ¶ 84 & Ex. B.

On January 17, 2007, the Receiver filed the Fourth Amended Complaint against multiple parties, including FirstRand.  DE 259.  The Complaint asserts the following claims:

I.      Actual fraudulent transfer under Florida Statutes § 726.105(1)(a), Florida Statutes § 726.108 and other applicable law;

II.     Constructive fraudulent transfer under Florida Statutes §726.105(1)(b), Florida Statutes § 726.108 and other applicable law;

III.    Constructive fraudulent transfer under Florida Statutes § 726.106(1), Florida Statutes § 726.108 and other applicable law; and

IV.     Unjust enrichment.

---

[2]  The Receiver refers to Offshore, Partners, Omnifund, Offshore LSPV and Partners LSPV together as the "Funds."

On July 20, 2007, more than six years after having received its final redemption proceeds from the Funds, the Receiver effected service upon FirstRand pursuant to the Hague Convention in Dublin, Ireland.  This was the first notice of the lawsuit received by FirstRand.  *See* Declaration of Patrick Smith dated September 26, 2007 at ¶ 13 ("Smith Decl.").

FirstRand filed a motion to dismiss for lack of personal jurisdiction and failure to state a claim on September 28, 2007 [DE 382, 383, 384 and 386].  In response, on October 15, 2007, the Receiver filed a motion to engage in limited jurisdictional discovery.  On December 7, 2007, the Court authorized the Receiver to conduct "narrowly tailored . . . written jurisdictional discovery" [DE 408].  By Order dated January 23, 2008, the Court denied FirstRand's motion to dismiss without prejudice "for statistical purposes only" and stated that FirstRand "may reassert the motion upon completion of jurisdictional discovery." [DE 418].  With jurisdictional discovery now complete, FirstRand reasserts its motion to dismiss.

<u>Standard of Review</u>

<u>Personal Jurisdiction</u>

A federal district court may exercise personal jurisdiction over a nonresident defendant when it "has certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (internal quotation marks omitted).  In cases where the court exercises

personal jurisdiction by virtue of a federal statute authorizing nationwide service of process, the requirement of "minimum contacts" with a forum state is inapplicable. *Briggs v. Goodwin*, 569 F.2d 1, 8-10 (D.C. Cir.1977), *rev'd sub nom. on other grounds*, *Stafford v. Briggs*, 444 U.S. 527 (1980).  In such circumstances, minimum contacts with the United States suffice.  *United States Sec. & Exch. Comm'n v. Carrillo,* 115 F.3d 1540, 1543 (11th Cir. 1997) (applicable forum for minimum contacts analysis, in determining whether exercise of personal jurisdiction over nonresident defendant comports with due process, is the United States, rather than state where suit is brought, in cases where service of process has been effected pursuant to federal statute authorizing nationwide or worldwide service); 4 Charles Alan Wright et al., Federal Practice And Procedure § 1068.1 (2d ed. 1997).

The parties have submitted evidentiary materials in support of their respective positions.  While consideration of such materials ordinarily would convert a motion to dismiss into one for summary judgment, see Fed.R.Civ.P. 12(b), in the context of personal jurisdiction the motion remains one to dismiss even if evidence outside the pleadings is considered.  *Bracewell v. Nicholson Air Services, Inc.*, 748 F.2d 1499, 1501 n.1 (11th Cir. 1984).

An evidentiary hearing on a motion to dismiss for lack of personal jurisdiction is discretionary but not mandatory.  *E.g., Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir.1990); *Bracewell*, 748 F.2d at 1504.  Because the parties did not request an evidentiary hearing, the Court exercises its discretion not to conduct one.

Absent an evidentiary hearing, the plaintiff need not prove the existence of personal jurisdiction by a preponderance of the evidence; rather, the plaintiff's burden is to establish a prima facie case of personal jurisdiction. *E.g., Carrillo,* 115 F.3d at 1542. A prima facie case requires "enough evidence to withstand a motion for directed verdict." *Id.* (internal quotes omitted). In determining whether the plaintiff has established a prima facie case, the Court must accept as true all allegations of the complaint that are not controverted by evidence submitted by the defendant. *E.g., id; Bracewell,* 748 F.2d at 1504. Thus, if the allegations of the complaint establish a prima facie case of personal jurisdiction and the defendant submits no evidence controverting those allegations, the jurisdictional inquiry comes to an end.

If the allegations of the complaint do not themselves establish a prima facie case of personal jurisdiction, or if they are controverted by the defendant's evidence, the plaintiff must respond with affirmative evidence to supply the deficiency. *Posner v. Essex Insurance Co.,* 178 F.3d 1209, 1215 (11th Cir. 1999). If the plaintiff does so, its evidence is to be credited even if it conflicts with the defendant's evidence. *E.g., Molina v. Merritt & Furman,* 207 F.3d at 1356; *Morris v. SSE, Inc.* 843 F.2d 489, 492 (11th Cir. 1988).

<u>Discussion</u>

I.   <u>Personal Jurisdiction</u>

New York's long-arm jurisdiction statute can be relied upon for this Court to exercise personal jurisdiction over FirstRand. This is a federal receivership

proceeding, and the Receiver timely filed the receivership order in the Southern

District of New York.  As this Court has previously held, based on 28 U.S.C. §§ 754 and

1692, the territorial jurisdiction of this Court, as the appointing Court for this

Receivership, covers any and all districts in the United States where property

believed to be that of the Receivership estate is found, so long as the proper

documents have been filed by the Receiver in each such district as required by § 754.

*See Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 823-24 (6th Cir. 1981); *SEC v. Vision

Comm., Inc.*, 74 F.3d 287, 290 (D.C. Cir. 1996); Order and Opinion Granting Wise

Global's Motion to Dismiss, DE 161.  Because the receivership order was timely filed

in the Southern District of New York, this Court's geographical jurisdiction extends to

New York.  If FirstRand is subject to personal jurisdiction in New York, this Court may

likewise exercise jurisdiction over FirstRand in this action.  *See Haile*, 657 F.2d at

823-24.

Long-arm statutes confer "specific jurisdiction" over a defendant when the

cause of action arises out of the defendant's state-connected activity.  *See Burger

King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 & n.15 (1985).  New York's long-arm

statute allows for the exercise of specific personal jurisdiction over a non-domiciliary

who, in person or through an agent, transacts any business within the state.

Jurisdiction is proper when (1) the defendant has transacted business in New York,

and (2) the cause of action arises out of the subject matter of the transacted

business.  N.Y. CPLR § 302(a)(1); *Sole Resort, S.A. de C.V. v. Allure Mgmt., LLC*, 450

F.3d 100, 103 (2d Cir. 2006); *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 508 (N.Y. 2007)

(stating that under § 302(a) "'a court may exercise personal jurisdiction over any

non-domiciliary . . . who in person or through an agent . . . transacts any business

within the state' if the cause of action asserted arises out of that transaction");

*Beatie and Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d 367, 387 (S.D.N.Y.

2006).

A non-resident "transacts business" in New York within the meaning of its

long-arm statute when he purposefully avails himself of the privilege of conducting

activities within New York, thus invoking the benefits and protections of its laws.

*Beatie and Osborn*, 431 F. Supp. 2d 367; *Cutco Indus. Inc. v. Naughton*, 806 F.2d 361,

365 (2d Cir. 1986); *Cavu Releasing, LLC. v. Fries*, 419 F. Supp. 2d 388, 391 (S.D.N.Y.

2005) (defendant who transacts business in New York will be subject to personal

jurisdiction there if acts were purposeful and there is substantial relationship

between those acts and plaintiff's claim).

The test for jurisdiction under New York's long-arm statute is qualitative rather

than quantitative, and the inquiry should be designed to determine whether the

defendant has engaged in some purposeful activity in New York in connection with

the matter in suit.  *Wickers Sportswear, Inc. v. Gentry Mills, Inc.*, 411 F. Supp. 2d

202, 208 (E.D.N.Y. 2006); *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F.

Supp. 2d 265, 272 (S.D.N.Y. 2004) (jurisdictional inquiry under New York's long-arm

statute focuses on whether the defendant engaged in some purposeful activity in New

York in connection with matter in suit).  New York's long-arm statute is a single act statute, empowering courts to exercise specific jurisdiction over a non-domiciliary on the basis of one transaction in the forum so long as the defendant's activities in New York were purposeful and there is a substantial relationship between the transaction and claim asserted.  *Packer v. TDI Systems, Inc.,* 959 F. Supp. 192, 197 (S.D.N.Y. 1997).  New York's long arm statute should be broadly construed, *i.e.,* to the limits of due process.  *Ulster Scientific, Inc. v. Guest Elchrom Scientific AG,* 181 F. Supp. 2d 95, 101 (N.D.N.Y. 2001).

The Receiver asserts that the following allegations state more than a prima facie case of specific personal jurisdiction over FirstRand:

1.     FirstRand was an investor in the Funds; the Funds were managed by Lauer and the Management Companies in New York; the Funds' assets, records, and accounts were all located in New York; and the Funds invested in United States securities on United States exchanges.  Compl. ¶¶ 10, 12-25, 82-84 and 90.

2.     The Receiver's assertions against FirstRand arose from FirstRand's purposeful activities within New York and contact with Fund representatives located in New York.  Compl. ¶ 19.  Specifically, FirstRand maintained a bank account with Standard Chartered Bank in New York to facilitate the very transaction at issue in this litigation.  Jurisdictional Discovery Responses at 7.

3.     Representatives of FirstRand or its predecessor also exchanged correspondence directly with representatives of Funds, including Michael Lauer, related to the

Funds.   Jurisdictional Discovery Responses bates labeled FRI 99-101.

4.      FirstRand's predecessor maintained contact with the Receivership Entities in

New York both independently and by and through Citco Fund Services

(Curacao) N.V., as fund administrator.  The Receiver asserts that "Citco, in

effect, acted as agent for FirstRand in connection with subscriptions,

redemptions and other activities with the Funds."  Response at 8, n.8.

FirstRand responds that its contacts with the state of New York are insufficient

to subject it to personal jurisdiction in this Court and that there is no case law

applying New York's long-arm statute that would support the exercise of jurisdiction

over it.  Interestingly, FirstRand does not address the issue of it having a

correspondent bank account with Standard Chartered Bank in New York through

which the very transaction at issue in this litigation was processed.

The use of an account held by a non-domiciliary is key to this jurisdictional

analysis.  Previously this Court stated that a correspondent bank account, standing by

itself, may not form the basis for long-arm jurisdiction on the theory of transacting

business within the state.  *See, e.g., Steinberg, et al. v. Barclay's  Nominees

(Branches) Limited, et al.,* Case No. 04-60897-Civ-Marra, DE 171 at 11, quoting *Amigo

Foods Corp. v. Marine Midland Bank-New York*, 39 N.Y.2d 391, 396 (N.Y. 1976); *see

also, Nemetsky v. Banque de Developpement de la Republique du Niger*, 64 A.D.2d

694, 749 (N.Y. App. Div. 1978); *Taub v. Colonial Coated Textile Corp.*, 54 A.D.2d 660,

661 (N.Y. App. Div. 1976); *Masonite Corp. v. Hellenic Lines, Ltd.*, 412 F.Supp. 434,

438 (S.D.N.Y. 1976) (foreign vessel owner's maintenance of bank account in New York, although a transaction of business within New York, could not serve as the basis for asserting jurisdiction over the foreign vessel owner where the cause of action asserted against the vessel owner did not arise out of its maintenance of the bank account). If, however, the account in question played a role in the activities giving rise to the cause of action, specific jurisdiction under N.Y. C.P.L.R. § 302 may be proper. *Neewra, Inc. v. Manakh Al Khaleej General Trading and Contracting Co.*, Case No. 03-Civ-2936, 2004 WL 1620874, *3 (S.D.N.Y. July 20, 2004) ("a cause of action arising out of a transaction involving the use of a correspondent account may confer jurisdiction over defendant in New York") (citation omitted); *Oldfield v. Pueblo de Bahia Lora, S.A.* Case No. 07-11958, 2009 WL 330935 (11th Cir. Feb. 12, 2009).

This Court has had the opportunity to address this issue in three related instances. In the Order and Opinion Granting Wise Global's Motion to Dismiss in this case, this Court concluded that it lacked personal jurisdiction over Wise Global because the mere wiring of funds through a correspondent bank in New York was insufficient to create jurisdiction under N.Y. CPLR § 302(a)(1). DE 161 at 11-16. Wise Global was a Hong Kong based hedge fund that maintained a bank account with Standard Bank Asia Limited, a Hong Kong bank. Wise Global did not maintain a bank account of any sort in New York or anywhere else in the United States or have any ties to the United States. *See id*. at 6. Rather, the bank that Wise Global used,

Standard Bank Asia Limited, in turn had its own correspondent bank account at Citibank, N.A. in New York, which Standard Bank utilized in connection with the redemptions from the Funds.  *Id.* at 15.  As a result, this Court held that fact to be insufficient to establish personal jurisdiction over Wise Global.  *Id.*

In *Steinberg, et al. v. Barclay's Nominees (Branches) Limited, et al.,* 04-60897-Civ-Marra, this Court concluded that the Receiver had established a prima facie case of personal jurisdiction over the non-domiciliary defendants Credit Agricole and CS Luxembourg due to their specific and intentional use of their own correspondent bank accounts at New York banks.  *See Steinberg, et al. v. Barclay's Nominees (Branches) Limited, et al.,* Case No. 04-60897-Civ-Marra, DE 171 at 11-14, DE 172 at 10-13.  By opening such an account, in designating the account for the receipt of redemptions from the Funds, and then using the account to receive redemption transfers, the Court found Credit Agricole and CS Luxembourg purposely availed themselves of New York facilities, and could reasonably expect to be called into court in New York for claims arising from its use of those New York contacts.  *Id.* That case differed from the facts in Wise Global because the defendants themselves, Credit Agricole and CS Luxembourg, had the correspondent bank accounts in New York, the accounts were in their names and the accounts were used for the very transactions that gave rise to the Receiver's claims.

The use of the New York bank accounts for the very transactions upon which the Receiver's claims arose provided an appropriate basis for the exercise of personal

jurisdiction.  *See Bank Brussels Lambert v. Fiddler Gonzalez and Rodriguez*, 171 F.3d 779, 787 (2d Cir. 1999) ("[A] single transaction would be sufficient to [grant jurisdiction over the defendant,] so long as the relevant cause of action also arises from that transaction"); *see also Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71 (N.Y. 2006) ("[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted").

Such is also the case here.  FirstRand concedes that it has a bank account in New York and that the Second Redemption at issue was transferred through it:

> The funds from the first redemption were transferred to a correspondent account held by Allied Irish Bank plc at Chase Manhattan Bank, account #001-1-907599.  The funds from the second redemption were transferred to RMBID's correspondent account with Standard Chartered Bank in New York.  Standard Chartered Bank is incorporated in England.  *See* Smith Decl. ¶ 22.  The bank account at Standard Chartered Bank is used by FirstRand to facilitate transactions effected around the world that are settled in United States dollars.  *Id.*

Jurisdictional Discovery Responses at 7; *see also* 9/26/07 Smith Decl. ¶ 22.  *See also* Jurisdictional Discovery Responses at 10 ("FirstRand has a correspondent bank account with Standard Chartered Bank in New York").[3]

---

[3]  The Receiver also cites to "Motion to Dismiss at 9," but upon review of the instant Motion to Dismiss at page 9, the Court cannot discern any relevant information or evidence on that page.

The Standard Chartered Bank account was purposely opened by FirstRand to facilitate transactions that are settled in United States dollars.  It was designated and used by FirstRand to receive the Second Redemption from the Funds.  This cause of action for fraudulent transfer and unjust enrichment arises out of FirstRand's receipt of a redemption that was deposited into FirstRand's Standard Chartered Bank account in New York.  Just as with Credit Agricole and CS Luxembourg, and unlike Wise Global, FirstRand's own account was used to receive a redemption transfer at issue in this case.  Based on these facts, FirstRand transacted business in New York and this cause of action arises out of the subject matter of the transacted business.  *Oldfield v. Pueblo de Bahia Lora, S.A.* Case No. 07-11958, 2009 WL 330935 (11th Cir. Feb. 12, 2009).  Moreover, because FirstRand purposely availed itself of New York facilities, it could reasonably expect to be called into court in New York for claims arising from its use of that New York contact.  *Id.*  Accordingly, the Court may exercise personal jurisdiction over FirstRand.

FirstRand's motion to dismiss for lack of personal jurisdiction is denied.  Since the Court finds it may exercise specific jurisdiction over FirstRand on the basis of FirstRand's receipt of a redemption from the Funds through FirstRand's correspondent New York bank account, it is unnecessary to consider the other arguments made in support of jurisdiction.

## II.   Standing

FirstRand asserts two reasons why it thinks the Receiver lacks standing:  (1) because under British Virgin Island ("BVI") law, a receiver does not act on behalf of creditors; and (2) because the Receiver does not have standing to bring claims under Sections 726.105(1)(b) and 726.106(1) of the Florida Uniform Fraudulent Transfer Act ("FUFTA").

The Receiver responds that based on the most significant relationship test, either Florida or New York law, rather than BVI law, applies.  Which jurisdiction's law controls the state and common law claims in this and other ancillary actions has yet to be fully briefed and decided.  *See, Court-Appointed Receiver v. Alfred A. Taubman as Trustee for the Taubman Ret. Rev. Trust, et al.*, Case No. 05-60199-Civ-Marra [DE 96] (denying a motion to dismiss and finding, among other things, that it is premature to undertake a choice of law analysis at the motion to dismiss stage of the proceedings).  Indeed, the Receiver has retained an expert to brief the conflict of laws issue, and arguments made based on BVI, Florida or New York law will not be decided until the Court rules on the conflict of laws question.

The question of whether the Receiver has standing under FUFTA, however, has already been addressed by the Court.  *See, e.g., Court Appointed Receiver v. The Citco Group Ltd., et al.,* Case No. 05-60055-CIV-MARRA, Order and Opinion on Motions for Reconsideration, DE 114.  The Court has concluded that the Receiver may pursue a cause of action under FUFTA as long as he has a claim which qualifies him as a

creditor of the entity or individual who has either transferred or received assets which thwarts the creditor's attachment.  *Id.*

The Receiver maintains that he has pled that he is a creditor of FirstRand.  No cite or reference, however, is made to where such allegation may be found in the Complaint.  The Court agrees with FirstRand that the Receiver has not adequately alleged that he is a creditor.  As this Court has concluded in several ancillary cases, the Receiver must allege sufficient facts to support an allegation that a Receivership Entity was a creditor of FirstRand, that FirstRand intended fraud or is a debtor who transferred property and did not receive reasonably equivalent value in exchange for the transfer, and there was a conveyance of property which could have been available to satisfy the debt due to the creditor.  *See, id.*  Consistent with other ancillary cases, leave to amend the Complaint to clarify the creditor/debtor relationship will be granted.

### III.    Statutes of Limitations and Repose

A statute of limitations bar is "an affirmative defense, and ... plaintiff[s][are] not required to negate an affirmative defense in [their] complaint."  *La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citing *Tregenza v. Great American Communications Co.*, 12 F.3d 717, 718 (7th Cir. 1993)).  A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is "apparent from the face of the complaint" that the claim is time-barred.  *Id.* (citing *Omar v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003)); *Carmichael v. Nissan Motor*

*Acceptance Corp.,* 291 F.3d 1278, 1279 (11th Cir. 2002).

The original Complaint was filed on July 9, 2004, and the Fourth Amended

Complaint was filed on January 17, 2007.[4]  The transfers that form the basis of

FirstRand's alleged liability were made on October 20, 1999 and January 26, 2001.

As previously stated, the Fourth Amended Complaint asserts the following four

claims against FirstRand:

I. Actual fraudulent transfer under Florida Statutes § 726.105(1)(a), Florida Statutes § 726.108, and other applicable law;

II. Constructive fraudulent transfer under Florida Statutes § 726.105(1)(b), Florida Statutes § 726.108, and other applicable law;

III. Constructive fraudulent transfer under Florida Statutes § 726.106(1), Florida Statutes § 726.108, and other applicable law; and

IV. Unjust enrichment.

DE 259-2.

A cause of action with respect to Count I (actual fraudulent conveyance) is

extinguished unless the action is brought within four years after the transfer was

made or, if later, within one year after the transfer was or could reasonably have

---

[4]  FirstRand was named in the original Complaint, and there were no changes in the claims against it in the amended complaints.  Federal Rule of Civil Procedure 15(c) permits the relation back of an amended pleading to the date of the original pleading when the "claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading . . . ." Fed.R.Civ.P. 15(c).  Here the Fourth Amended Complaint asserts the same causes of action and seeks to recover the same transfers from the FirstRand as the original Complaint, therefore the claims asserted in the Fourth Amended Complaint are deemed asserted as of the filing of the original Complaint.

been discovered by the claimant.  Fla. Stat. § 726.110(1).  A cause of action with

respect to Count II ("constructive" fraudulent transfers as to present and future

creditors), Count III ("constructive" fraudulent transfers as to present creditors), and

Count IV (unjust enrichment) is extinguished unless the action is brought within four

years after the transfer was made, regardless of when the transfer is ultimately

discovered.  Fla. Stat. § 726.110(2); Fla. Stat. § 95.11(3)(k).

There is no issue that the Second Redemption took place within four years

prior to the filing of the original Complaint.  The First Redemption, however, took

place on October 20, 1999, more than four years prior to the filing of the original

Complaint.  FirstRand asserts that, as a matter of law, Counts II, III, and IV of the

Complaint are barred with respect to the First Redemption.

The Receiver initially responds that this argument is irrelevant because the

Complaint alleges that all of the profits were received with the Second Redemption.[5]

_____

[5]  The parties disagree on how to calculate any possible excess redemption.
The Receiver states claims should be analyzed on a net invested capital basis, which
the Court has previously approved.  *See* Case No. 03-80612-Civ-Marra, DE 1079 ("The
Receiver is authorized to use the "Net Invested Capital" concept . . . for purposes of
analyzing and determining allowed investor claims and thereafter for purposes of
making distributions.")  Under the net invested capital concept, the Receiver
analyzes claims based on the total amount of money invested less the total amount
of money received.  Under this analysis, FirstRand invested a total of $2,000,000 and
received a total of $3,735,470.65.  The Receiver argues that FirstRand did not receive
a profit until it received the Second Redemption in the amount of $2,735,470.65.
FirstRand states excess redemptions should be calculated based on the Net Asset
Values for the Offshore Fund four years prior to filing the Complaint and at the time
of FirstRand's redemptions.  FirstRand argues that the Receiver's net distribution
argument has no application as FirstRand is not receiving a distribution from the

The Receiver also argues that even if the statute of limitations is relevant, the Receiver should be able to recover the First Redemption under any of the counts of the Complaint due to equitable tolling and other applicable law.

A. __Equitable Tolling__

"'Equitable tolling' is a doctrine under which plaintiffs may sue after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances." *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998).[6] Equitable tolling should be "applied sparingly" by the courts. *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000). Equitable tolling is available and appropriate where the plaintiff untimely files his complaint because of "extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Sandvik v. U.S.*, 177 F.3d 1269, 1271 (11th Cir. 1999). The burden rests with a plaintiff to show that equitable tolling is warranted. *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 661 (11th Cir. 1993).

---

receivership estate.

[6] Florida Statutes § 95.051(1) enumerates eight circumstances under which the running of time under any statute of limitations is tolled. Absent from this list is a Receiver's failure to identify properly the recipient of a transfer. Furthermore, § 95.051(2) expressly precludes the use of any tolling provision not listed: "No disability or other reason shall toll the running of any statute of limitations except those specified in this section, § 95.091, the Florida Probate Code, or the Florida Guardianship Law." Thus, the legislature has made clear its intent to exclude all tolling exceptions not listed in the statute. *HCA Health Servs. of Florida, Inc. v. Hillman*, 906 So.2d 1094, 1098-1100 (Fla. Dist. Ct. App. 2004).

The Eleventh Circuit has held that equitable tolling is appropriate where the defendant misleads the plaintiff into allowing the statute of limitations to lapse, where the plaintiff has no reasonable way of discovering the wrong perpetrated against him during the statutory period, or where the plaintiff timely files a technically defective pleading but acts with proper diligence in prosecuting his claim. *Justice v. U.S.*, 6 F.3d 1474, 1479 (11th Cir. 1993); *see also Irwin v. Veterans Administration*, 498 U.S. 89, 96 (1990).  Due diligence by plaintiff is insufficient alone, and equitable tolling does not apply to "garden variety" claims of excusable neglect.  *Justice*, 6 F.3d at 1479-80; *Irwin*, 498 U.S. at 96; *see also Covey v. Arkansas River Co.*, 865 F.2d 660, 662 (5th Cir. 1989) ("It is a common maxim that equity is not intended for those who sleep on their rights").

The Receiver argues equitable tolling is applicable to this case by analogizing himself to a bankruptcy trustee, where statutes of limitations have been tolled in order to further the goal of recovering funds for distribution to creditors.  The cases cited by the Receiver stand for the proposition that in special circumstances of excusable ignorance, or if the defendant's wrongful conduct prevents a timely filing, the statute of limitations on an avoidance claim may be equitably tolled.  *See In re Olsen*, 36 F.3d 71 (9th Cir. 1994); *In re Stanwich Fin. Servs. Corp.*, 29 B.R. 25 (Bkrtcy. D. Conn. 2003); *In re Int'l Admin. Servs., Inc.*, 408 F.3d 689, 700 (11th Cir. 2005). These cases might be applicable if a Receiver can show that he "remained in the dark without any fault or want of diligence or care on his part." *In re Olsen*, 36 F.3d at 73.

The doctrine of equitable tolling may not be applied to Counts II and III under FUFTA because the constructive fraudulent transfer provisions of FUFTA make no allowances for tolling based on the plaintiff's discovery of the transfer.  Fla. Stat. § 726.110(2).  A cause of action under Section 726.105(1)(b) is "extinguished" if the plaintiff does not commence the action within four years of the transfer.  *Id*.  This provision does not include the "savings" clause contained within the statute of limitations for causes of action brought under Section 726.105(1)(a) permitting a cause of action to be commenced within one year of the plaintiff's discovery.  A well settled principle of statutory construction provides that when the legislature has included a specific provision in one part of the statute and omitted it in another part of the same statute, the Court must assume the omission was intentional.  *See, e.g., Parragon Health Servs., Inc. v. Cent. Palm Beach Cmty. Mental Health Ctr.*, 859 So.2d 1233, 1235-36 (Fla. Dist. Ct. App. 2003) (holding that a cause of action under Section 726.106(2) was extinguished one year after the date of the transfer because the one year discovery provision in Section 726.110(1) does not apply to Section 726.110(3)).  Thus, no considerations of actual or constructive knowledge are relevant to this analysis.  The Receiver does not provide any authority to support the determination that because § 726.110(2) does not contain a savings clause, considerations of actual and constructive knowledge are not relevant.  *Id*.

Because the First Redemption proceeds were sent to FirstRand more than four years before the Receiver's initial complaint was filed, those claims in Counts II and III alleging constructive fraudulent transfer under FUFTA are time-barred.  FirstRand's motion to dismiss Count II and III are granted *as to FUFTA* for the First Redemption.

### B.   <u>Unjust Enrichment</u>

Count IV asserts a common law claim for unjust enrichment.  Under Florida law, a cause of action for unjust enrichment is extinguished unless the action is brought within four years after the transfer was made, regardless of when the transfer is ultimately discovered.  Fla. Stat. § 726.110(2); Fla. Stat. § 95.11(3)(k). FirstRand received its First Redemption proceeds more than four years before the Receiver filed the initial complaint.  The Florida Supreme Court has ruled that there is no equitable tolling for unjust enrichment claims and has refused to apply a delayed discovery doctrine to such claims.  *Davis v. Monahan*, 832 So.2d 708, 711-12 (Fla. 2002) (finding unjust enrichment claim to be barred by four-year statute of limitations and delayed discovery of misappropriations to be irrelevant).  This Court has applied previously *Davis v. Monahan* to preclude the Receiver from relying upon equitable tolling for its unjust enrichment claims.  *See, e.g.,* Order and Opinion Regarding ZCM Asset Holding Company [DE 432].  *See also Marty Steinberg v. Barclay's Nominees (Branches) Ltd.*, Case No. 04-60897-Civ-Marra, DE 171 and 172; *Marty Steinberg v. Alpha Fifth Group, et al.*, Case No. 04-60899-Civ-Marra, DE 586; *Marty Steinberg v. Citco Group, Ltd., et al.*, Case No. 05-60055-Civ-Marra, DE 92.

Because the First Redemption proceeds were sent to FirstRand more than four years before the Receiver's initial complaint was filed, the Receiver's unjust enrichment claim with respect to that redemption is time-barred.  FirstRand's motion to dismiss Count IV is granted as to the First Redemption.

C.    **Other Applicable Law**

The Receiver has not limited his recovery of the alleged fraudulent transfer to causes of action solely under Florida law.  The Receiver has asserted causes of action under Florida and "other applicable law."  The Receiver's pleadings leave open the possibility that the laws of states other than Florida may apply to the Receiver's recovery of the transfers, and the Receiver has preserved his right to proceed under "other applicable law."

This allegation serves to preserve the Receiver's claims against FirstRand in the event the substantive law of some other state governs the Receiver's claims.  The Receiver raises the possibility that the law of New York, which provides for a six-year statute of limitation, may be applicable to this action.  If New York law applies, the statute of limitations may not have run on the First Redemption.

As previously stated, the Court has insufficient information as to whether Florida, New York or the BVI better satisfies the "significant relationship test" of the Restatement (Second) of Conflict of Laws.  If it is determined that New York law should apply and, if it is shown that the New York statute of limitations has not run as to the First Redemption, the Receiver's causes of action against FirstRand to recover

the First Redemption would be timely, even without application of equitable tolling. Because at the motion to dismiss stage, a complaint may be dismissed on the basis of a statute of limitations defense only if it appears beyond a doubt that plaintiffs can prove no set of facts that toll the statute, FirstRand's motion to dismiss Counts II and III are denied *as to other applicable law* for the First Redemption.

## IV.   Federal Rule of Civil Procedure Rule 9(b)[7]

FirstRand argues that the Receiver fails to sufficiently allege a claim for fraudulent transfer or unjust enrichment against them under Federal Rule of Civil Procedure 9(b) because the Complaint lumps together multiple defendants without specification of the nature of the alleged fraud of each.

Federal Rule of Civil Procedure Rule 9(b) ("Rule 9(b)") provides, in pertinent part, that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). This Rule "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Brooks v. Blue Cross and Blue Shield of*

---

[7] FirstRand also asserts that the Complaint does not satisfy Fed. R. Civ. P. 8(a) because it is devoid of factual allegations relating to any defendant. The Court agrees. "FUFTA claims are only permissible when the *factual allegations* in the complaint meet the elements of the statute." *In re Wiand*, 2008 WL 818509, at *7 (M.D. Fla. Jan. 28, 2008) (emphasis in original). The Court has already concluded that the Receiver has failed to plead the necessary factual allegations establishing the creditor/debtor relationship and leave to replead will be granted.

*Florida, Inc.*, 116 F.3d 1364, 1370-71 (11th Cir. 1997) *quoting Durham v. Business Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (internal quotation marks omitted).  This Rule is satisfied if the complaint sets forth (1) the exact statements or omissions made; (2) the time and place of each such statement and who made the statement or omission; (3) the substance of the statement and how it misled the plaintiff and (4) the defendant's gain due to the alleged fraud.  *See id.* quoting *Brooks*, 116 F.3d at 1371.  That stated, the Court must not allow the application of Rule 9(b) to vitiate the overall concept of notice pleading.  *See Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

This Court has previously held that Rule 9(b) should not be applied to cases such as this one where violations of the FUFTA are asserted:

> The Court concludes that the heightened pleading standard of Rule 9(b) does not apply to claims brought under the FUFTA.  *Special Purpose Accounts Receivable Co-op. Corp. v. Prime One Capital Co., L.L.C.*  No. 00-cv-06410, 2007 WL 4482611, *4 (S.D. Fla. Dec. 19, 2007).  Unlike common law fraud claims, fraudulent transfer claims are asserted against a person or entity that did not deal directly with the plaintiff in the challenged transaction.  Therefore, the plaintiff generally possesses little or no information about the alleged fraudulent transfer other than it occurred.[8]  The fraudulent act, the clandestine act of hiding money, is allegedly committed by a defendant and another, to the exclusion of the plaintiff.  This is in stark contrast to a common law fraud claim where a

---

[8]  As discussed by Wright and Miller, a common reason identified by courts to require heightened pleading for fraud claims rests on the idea that without this information, a defendant would be unable to formulate a responsive pleading.  C. Wright & A. Miller, 5A Federal Practice & Procedure § 1296 (2004).  In the fraudulent transfer context, however, the defendant, as opposed to the plaintiff, is more likely to possess the particularized information about the complained-of conduct.

> plaintiff alleges that a defendant made a material false statement or omission directly to the plaintiff.  Under such circumstances, the plaintiff is in a position to plead with the specificity required by Rule 9(b).  This Court concludes that despite the use of the word "fraud," a fraudulent transfer claim is significantly different from other fraud claims to which Rule 9(b) is directed.  *See Nesco Inc. v. Cisco,* No. Civ.A. CV205-142, 2005 WL 2493353, * 3 (S.D. Ga. Oct. 7, 2005) (finding common law fraud and fraudulent transfer "bear very little relation to each other" since the element of false representation need not be proven in fraudulent transfer cases).  Given this lack of access to information on the part of a plaintiff in a fraudulent transfer case, the application of a heightened pleading standard is inappropriate.

*Gulf Coast Produce, Inc. v. American Growers, Inc*., 07-cv-80633, 2008 WL 660100, *5 (S.D. Fla. Mar. 7, 2008).  Therefore, Defendant's argument that the Complaint fails to satisfy Rule 9(b) pleading requirements is rejected.

**Leave to Amend**

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely granted when justice so requires."  Therefore, in accordance with the usual practice upon granting a motion to dismiss, leave to replead those counts that are dismissed herein without prejudice will be permitted.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Defendant FirstRand (Ireland) PLC's Renewed Motion to Dismiss the Fourth Amended Complaint [DE 434] **is GRANTED in part and**

**DENIED in part**, in accordance with the findings above.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County,

Florida, this 25th day of March, 2009.

KENNETH A. MARRA
United States District Judge

copies to:

All counsel of record
Magistrate Judge Linnea R. Johnson